UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SARAI ELENA BARRIOS SANDOVAL** | **CIVIL DOCKET NO. 6:25-cv-01467** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BRIAN ACUNA, ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### MEMORANDUM RULING

Before the Court is a PETITION FOR WRIT OF HABEAS CORPUS (the "Petition") filed by the Petitioner, Sarai Elena Barrios Sandoval (hereinafter, "Petitioner"). [Doc. 1]. Respondents Brian Acuna, Kristi Noem, and Pamela Bondi (collectively, "Respondents") filed a Response on October 17, 2025, to which Petitioner filed a Reply on October 26, 2025. [Doc. 10]; [Doc. 13]. For the following reasons, the Petition is DENIED and DISMISSED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a Colombian native who illegally entered the United States without being inspected by an immigration officer. [Doc. 10-1, ¶ 3]. Petitioner claims that she crossed the United States-Mexico border on March 7, 2023, where she then encountered United States Border Patrol agents. [Doc. 1, ¶ 26]; [Doc. 10-1, ¶ 4]. Petitioner was released on an "alternate to detention" program—allegedly due to lack of bed space—on March 8, 2023. [Doc. 10-1, ¶ 3]. Petitioner claims that she was then ordered to appear for a credible fear interview on September 9, 2025. [Doc. 1, ¶ 26]. After her interview, she alleges that she was detained and sent to the South Louisiana ICE Processing Center in Basile, Louisiana. [*Id.*]; [Doc. 10-1, ¶ 11].

According to Respondents, Petitioner filed an application for asylum with the United States Citizenship and Immigration Service ("USCIS") on January 24, 2024, but her application was administratively closed for lack of jurisdiction on September 9, 2025. [Doc. 10-1, ¶ 5]. Petitioner was then served with a Notice to Appear charging her with removability under the Immigration and Nationality Act ("INA") Sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i), which allege that she is an alien present in the United States who has not been admitted or paroled. [Doc. 10-2, p. 1]; [Doc. 10-3, p. 1]. As a result, Petitioner is currently considered an "applicant for admission" and is in removal proceedings under Section 240 of the INA, 8 U.S.C. § 1229a. [Doc. 10-2, p. 1]. Since her detention, Petitioner has remained in ICE custody at the South Louisiana ICE Processing Center. [Doc. 10-1, ¶ 11].

Petitioner was denied bond at a custody redetermination hearing on October 1, 2025, with the immigration court finding that it did not have jurisdiction to conduct a bond hearing or release her on bond under the precedent set in *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025). [Doc. 10-1, ¶ 9]; [Doc. 10-4].

After being denied a bond hearing, Petitioner filed a Petition for Writ of Habeas Corpus with this Court on October 1, 2025. [Doc. 1]. The Court held a status conference with counsel on October 6, 2025, via Zoom. [Doc. 7]. After the status conference, the Court issued an expedited briefing schedule, ordering Respondents to respond to the Petition on or before October 20, 2025, and allowing Petitioner to file a reply on or before October 27, 2025. [*Id.*] Respondents filed their Response on October 17, 2025. [Doc. 10]. Petitioner filed a Reply on October 26, 2025. [Doc. 13].

At bottom, Petitioner argues that she should not be subject to mandatory detention pursuant to Section 235(b)(2) of the INA, 8 U.S.C. § 1225(b)(2), but instead granted a bond redetermination hearing under Section 236 of the INA, 8 U.S.C. § 1226(a), and related agency regulations. *See generally* [Doc. 1]. In this regard, Petitioner's Petition for a Writ of Habeas Corpus filed with this Court makes the following claims for relief—all stemming from Respondents' alleged failure to provide Petitioner with a bond hearing: (1) violation of § 1226(a); (2) violation of Petitioner's Fifth Amendment right to due process through failure to provide a bond hearing under § 1226(a) and failure to provide an individualized hearing for domestic civil detention; and (3) violations of substantive due process. [*Id.*] Respondents contend that Petitioner's detention under § 1225(b) instead of § 1226(a) is consistent with the plain statutory language and does not deprive Petitioner of due process. *See generally* [Doc. 10].

LAW AND ANALYSIS

I. **Jurisdiction**

   A. **Writ of Habeas Corpus**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. Art. I, § 9, cl. 2). Under § 2241, the writ is extended *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). The Supreme Court has interpreted § 2241 as granting district courts with jurisdiction to hear habeas corpus challenges to the

legality of the detention of aliens. *Rasul v. Bush*, 542 U.S. 466, 473 (2004). Here, Petitioner alleges that she is being held in violation of the statutory scheme set forth in portions of the INA, codified at 8 U.S.C. §§ 1225 and 1226. *See* [Doc. 1, ¶ 34]. Thus, this Court possesses habeas jurisdiction because Petitioner claims she is being detained "in violation of the … laws … of the United States." 8 U.S.C. § 2241(c)(3); *see also* [Doc. 1, ¶ 34].

### B. The INA's Jurisdiction-Stripping Provisions

Clearly having general habeas jurisdiction over aliens, the Court next turns to Respondents' contention that this Court nonetheless lacks jurisdiction over the claims asserted in the Petition because 8 U.S.C. §§ 1252(b)(9) and 1252(g) operate to strip this Court of jurisdiction. [Doc. 10, pp. 32–37]. Petitioner responds that § 1252(b)(9) only prohibits challenges to removal orders, not challenges to unconstitutional detentions, and that § 1252(g) only bars jurisdiction for three discrete immigration actions that Petitioner is not challenging. [Doc. 13, pp. 10–14]. Because the Court determines that the Petitioner is not entitled to habeas relief under the facts presented, the Court declines to determine the applicability of the jurisdiction-stripping provisions of the INA cited by the Respondents.

## II. Classification Under 8 U.S.C. §§ 1225 and 1226

Petitioner's primary argument centers on her detention under 8 U.S.C. § 1225(b)(2), which mandates detention during the pendency of removal proceedings and does not allow for the possibility of a bond hearing, instead of 8 U.S.C. § 1226, under which a detainee may be eligible for a bond hearing. *See generally* [Doc. 1].

Relying on broad language included in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), Petitioner asserts that § 1225 only applies to "recent arrivals," such as aliens who are crossing or have just recently crossed the border, or aliens who petition for admission at a port of entry. [Doc. 1, ¶ 29]. Petitioner further contends that § 1226 applies to aliens who enter without inspection and have resided in the country's interior for an extended period. [Doc. 1, ¶ 31]. Conversely, Respondents maintain that under a plain reading of the relevant statutes, § 1225 is a narrower statute applying to all aliens who are "applicants for admission," while § 1226 is a broader statute potentially applicable to any alien. [Doc. 10, p. 13]. With this background—and given the relative complexity of the subject matter—the Court will engage in a thorough analysis of the plain language and statutory schemes of the relevant provisions of §§ 1225 and 1226 to address Petitioner's claims.[1]

---

[1] Respondents also argue that Petitioner should be required to exhaust available administrative remedies before this Court considers her habeas petition. [Doc. 10, pp. 28–29]. Petitioner asserts that the Immigration Judge ("IJ") will hold that Petitioner is ineligible for bond pursuant to *Matter of Yajure Hurtado*, and thus the exhaustion of administrative remedies is futile. [Doc. 1, ¶¶ 26–27]; [Doc. 13, pp. 29–32].

An exception to exhaustion exists "where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (internal quotations omitted). In the Board of Immigration Appeals' ("BIA") precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the BIA held that anyone deemed inadmissible under § 1182(a)(6)(A)(i) will be subject to mandatory detention without bond pursuant to § 1225(b)(2). Here, Petitioner was charged with removability under § 212(a)(6)(A)(i) of the INA, which is codified at 8 U.S.C. § 1182(a)(6)(A)(i). [Doc. 10-3, p. 1]. Because *Hurtado* was designated as a precedential decision, it will "serve as precedent[] in all proceedings involving the same issue or issues" upon BIA review. 8 C.F.R. § 1003.1(g)(2). Thus, an IJ would hold that Petitioner is not eligible for a bond hearing because she is detained under § 1225(b)(2). Accordingly, the Court finds that the exhaustion requirement is waived here because Petitioner's appeal to the BIA concerning her eligibility for a bond hearing or mandatory detention would be "futile" considering *Hurtado*. *See Fuller*, 11 F.3d at 62.

When engaging in statutory interpretation, "[w]e begin, as always, with the text." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017). And "[i]f the statutory language is plain, we must enforce it according to its term." *King v. Burwell*, 576 U.S. 473, 486 (2015).

### A. Section 1225: A Provision Applicable to all "Applicants for Admission"

Section 1225 governs the inspection, detention, and removal of aliens seeking admission into the United States. Among other things, it provides detailed procedures for handling "applicants for admission," such as an expedited removal process, asylum claim processing, and detention requirements. *See, e.g.,* 8 U.S.C. § 1225(b)(1)(A)–(B). Important here, § 1225 also has specific detention requirements for "an alien who is an applicant for admission." *Id.* § 1225(b)(2)(A). Accordingly, to determine the legality of Petitioner's detention under § 1225(b)(2), the Court must first determine whether Petitioner is properly classified under the statute as an "applicant for admission."

#### 1. Section 1225(a): Defining "Applicants for Admission"

The first part of § 1225, § 1225(a), defines applicants for admission. "An alien present in the United States who has not been admitted *or* who arrives in the United States … shall be deemed … an applicant for admission." *Id.* § 1225(a)(1) (emphasis added). The "or" in the statute is disjunctive, and thus indicates that there are two types of aliens who are treated as "applicants for admission": (1) those who have not been admitted, and (2) those who arrive in the United States.

An alien who is a statutorily defined "applicant for admission" may be either inadmissible or not inadmissible. Applicants for admission are <u>not</u> *per se* inadmissible if they arrive at a port of entry and present themselves for inspection. *See id.* § 1225(a)(1). Conversely, an alien may be an "applicant for admission" who is also inadmissible by: (1) being present in the United States without having been admitted or paroled; or (2) arriving at a time or place not designated by the Attorney General. *See id.*; *see also id.* § 1182(a)(6)(A)(i). An "applicant for admission" may also be inadmissible if they do not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document" "at the time of application for admission." *Id.* § 1182(a)(7)(A)(i)(I); *see also id.* § 1225(a)(1).

Thus, under the plain text of § 1225(a)(1), any alien physically present in the United States who has not been admitted is an "applicant for admission," regardless of how long they have been in the country or whether they intended to apply or enter properly.

### 2. Section 1225(b): Detention of Applicants for Admission

Although the length of an alien's presence in the United States is not determinative of whether they are an "applicant for admission" under § 1225(a)(1), it does affect the course of an applicant's removal proceedings. More specifically, applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens

designated by the Attorney General." *Id.* An alien is a "certain other alien" for § 1225(b)(1) purposes if they have "not been admitted or paroled into the United States and … [have] not affirmatively shown …" that they have "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(iii)(II). No party has argued that § 1225(b)(1) is relevant here.

In contrast, "[§] 1225(b)(2) is broader" and applies to all "other aliens" who are not included under § 1225(b)(1) but are nevertheless defined as "applicant[s] for admission" under § 1225(a). *Jennings*, 583 U.S. at 287; *Id.* § 1225(b)(2)(A). In other words, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(2)(A), (B)).

Aliens who are subject to removal under § 1225(b)(1) are to be "removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). These removal proceedings are considered "expedited removal" proceedings because the alien is to be removed "without further hearing or review." *Id.* However, aliens subject to removal under § 1225(b)(2) are not subject to expedited removal but, rather, removal proceedings in the ordinary course pursuant to § 1229a. But, important here, the statute mandates that they nonetheless "*shall* be detained" for the pendency of their removal proceedings. *See* 8 U.S.C. § 1225(b)(2) (emphasis added).

Thus, an alien who is an "applicant for admission" is subject to mandatory detention regardless of whether they are being processed for removal under the expedited procedure set forth in § 1225(b)(1) or under the "standard" § 1229a removal proceedings called for in 1225(b)(2). Both mandate detention throughout the pendency of the removal proceedings.[2] *Id.* § 1225(b)(1)–(2). Put differently, both sections require mandatory detention until the conclusion of the inspection process—whether it is through expedited removal or the conclusion of § 1229a removal proceedings.

### B. Section 1226: A Catchall Provision for All Aliens

"Even once inside the United States, aliens do not have an absolute right to be here." *Jennings*, 583 U.S. at 288. "[A]liens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission" are subject to possible removal under § 1226. *Id.* (citing 8 U.S.C. § 1227(a)(1)–(2)). Section 1226 therefore operates as a catchall provision that "generally governs the process of arresting and detaining … aliens pending their removal." *Id.*

The statutory text of § 1226 bears out that purpose. "On a warrant … by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288. Under federal regulations, aliens detained under

---

[2] Under § 1225(b)(1)(B)(iii)(IV), the alien "*shall* be detained pending a final determination of credible fear of persecution and, if found to have no such fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV) (emphasis added). And under § 1225(b)(2)(A), "the alien *shall* be detained for a proceeding under [§] 1229a." *Id.* § 1225(b)(2)(A) (emphasis added). Thus, both § 1225(b)(1) and (b)(2) mandate the detention of applicants for admission.

§ 1226(a) may be afforded bond hearings at the outset of their detention.[3] 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also Jennings*, 583 U.S. at 306. Thus, § 1226(a) operates as a catchall provision for all aliens, including those who enter lawfully but later become inadmissible.

### C. Petitioner is Subject to § 1225(b) Detention as an "Applicant for Admission," and the Application of § 1225(b) to Petitioner Does Not Render § 1226(a) Superfluous

Here, considering the information presented to the Court, Petitioner has been properly classified as an "applicant for admission." Again, an "applicant for admission" is broadly defined by statute as "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). Petitioner does not argue that she has been admitted or paroled, and Petitioner's "Notice of Appearance and Additional Charges of Inadmissibility/Deportability" charge her with removability under § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I). *See generally* [Doc. 1]; [Doc. 10-2]; [Doc. 10-3]. Because Petitioner crossed the United States-Mexico border without being inspected by an immigration officer, she is therefore also appropriately categorized as an inadmissible alien under § 1182.[4] *See* 8 U.S.C. § 1182(a)(6)(A)(i),

---

[3] "Section 1226(c) … carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis in original). This Section prohibits the release of aliens who have committed certain criminal acts or acts of terror. *See* 8 U.S.C. § 1226(c). There are exceptions to § 1226(c)'s prohibition on releasing certain criminal aliens, such as for witness protection purposes, that are not relevant here. *See* 8 U.S.C. § 1226(c)(4). However, Respondents do not aver that Petitioner is detained pursuant to § 1226(c).

[4] As noted above, under § 1182 an alien is inadmissible if they are "present in the United States without being admitted or paroled, or [] arrive[] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). An "applicant for admission" may also be inadmissible if they do not possess "a valid

(a)(7)(A)(i)(I). The Court therefore concludes that § 1225(b)(2)'s plain language and the "all applicants for admission" language of *Jennings* permits the Department of Homeland Security ("DHS") to detain Petitioner under § 1225(b)(2). *See Jennings*, 283 U.S. at 287 ("[Section 1225(b)(2)] serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)…."); *see also* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States….").

Moreover, Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Petitioner is properly detained under § 1225(b) as an "applicant for admission," not § 1226(a). *See id.* § 1226(a) ("*On a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.") (emphasis added). All told, because Petitioner is an inadmissible alien who is an "applicant for admission," § 1225(b) applies to her. She therefore "shall be detained for a proceeding under [§] 1229a."[5] *Id.* § 1225(b)(2)(A).

Petitioner's argument that § 1226 would be rendered superfluous under Respondents' interpretation of § 1225(b)(2) is unpersuasive. The statutory scheme of

---

unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document" "at the time of application for admission." 8 U.S.C. 1182(a)(7)(A)(i)(I).

[5]    The fact that Petitioner may have lacked the subjective intent to ever apply for admission does not prevent her from being categorized as an "applicant for admission" under § 1225. For this Court to hold otherwise would clearly contravene the plain statutory language and Congress's intent. *See id.* § 1225(a).

Page 11 of 16

the INA does not render these two provisions mutually exclusive, and there are many other categories of aliens to whom § 1226(a) is applicable, but not § 1225(b)(2).

One example is the alien in *Jennings*, Alejandro Rodriguez. Rodriguez was a Mexican citizen who had been a lawful permanent resident since 1987. *Jennings*, 583 U.S. at 289. Rodriguez was convicted of a drug offense in 2004, and the Government detained him under § 1226 and sought his removal. *Id.* at 289–90. Rodriguez was not an inadmissible alien nor an "applicant for admission;" rather, he was an admitted alien. Thus, Rodriguez's case discussed in *Jennings* is a paradigmatic example of an admitted alien who is not an "applicant for admission" but who subsequently became subject to removal under § 1226(a).

Decisions from other district courts throughout the United States, including ones in this district, have rejected Respondents' argument and found that aliens like Petitioner are subject to detention under § 1226(a), not § 1225(b).[6] Although not binding upon this Court, this Court will briefly discuss why this Court's analysis differs from that of other courts.

---

[6] *See e.g., Ventura Martinez v. Trump*, 3-25-cv-01445 (W.D. La. Oct. 22, 2025); *Kostak v. Trump*, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Lopez Santos v. Noem*, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Lopez-Arevelo v. Ripa*, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycroft*, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427 (N.D. Iowa Sept. 30, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Arrazola-Guzman v. Andrews*, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *but see, e.g., Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 3025); *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025); *Pena v. Hyde*, 2025 WL 2108913, (D. Mass. July 28, 2025); *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025).

First, many of these cases rest upon the premise that §§ 1225 and 1226 are mutually exclusive. In *Jennings*, the Supreme Court did not state that § 1225(b) applies *only* to aliens seeking entry into the United States; instead, the *Jennings* Court stated that "§ 1225(b) applies *primarily* to aliens seeking entry into the United States." *Jennings*, 583 at 297 (emphasis added); *see also Vargas Lopez*, 2025 WL 2780351, at *9 n.5 (D. Neb. Sept. 30, 2025). Thus, the *Jennings* Court did not restrict the application of § 1225(b) only to aliens who are seeking entry into the United States or aliens who are near the border. Under the plain statutory language of § 1225(a)(1) that defines "applicants for admission," § 1225(b) also applies to those who are "present in the United States who ha[ve] not been admitted." 8 U.S.C. § 1225(a)(1). This is precisely Petitioner's status.

Second, although other district courts correctly found that some petitioners were subject to § 1229a standard removal proceedings instead of § 1225(b)(1) expedited removal proceedings, these courts conflated the type of removal proceeding initiated with the detainee's eligibility for a bond hearing. As discussed above, aliens who are subject to removal under both §§ 1225(b)(1) and 1229a are subject to mandatory detention; the only distinction is the procedure of the removal proceedings themselves. Therefore, the Court finds these other cases unpersuasive and concludes that Petitioner is subject to mandatory detention under § 1225(b)(2), without eligibility for a bond hearing.

Furthermore, many of these district court cases were decided before—or soon after—the BIA issued its opinion in *Matter of Yajure Hurtado*. 29 I&N Dec. 216 (BIA

2025). In *Hurtado*, the BIA correctly noted that "applicants for admission … are those aliens who are seeking admission and who an immigration officer has determined are 'not clearly and beyond a doubt entitled to be admitted.'" *Id.* at 218 (citing 8 U.S.C. § 1225(b)(2)(A)). Thus, "[t]his category is a 'catchall provision that applies to all applicants for admission not covered by'" § 1225(b)(1). *Id.* (quoting *Jennings*, 583 at 287). Consequently, "the INA explicitly requires that this … 'catchall' category of applicants for admission be mandatorily detained for the duration of their immigration proceedings." *Id.* at 218–19.

The BIA also correctly observed that § 236 of the INA, 8 U.S.C. § 1226(a), "does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly set forth in [§] 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2)." *Id.* at 219. And, as this Court noted above, "while an inadmissible alien who establishes that he or she has been present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless 'shall be detained for a proceeding under [§ 1229a].'" *Id.* at 219–20 (citing INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A)).

And while, of course, the BIA's precedential decisions are not binding upon this Court, the BIA is a court that possesses subject matter expertise on immigration matters. Thus, when considering the BIA's thorough analysis of the plain statutory text and legislative history of the INA, this Court finds *Hurtado* persuasive. *See id.* at 222–225 (discussing the legislative history of the INA).

Finally, though not necessary to reach its conclusion, this Court notes that its analysis comports with the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 302(a), 110 Stat. 3009-546, 3009-579, which added § 1225(a)(1) in 1996. Before IIRIRA, there was "an anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). Congress remedied this through the addition of § 1225(a)(1), which "ensure[d] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an 'applicant for admission.'" *Id.* The plain statutory text comporting with the legislative history supports this Court's conclusion.[7]

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner is lawfully detained under § 1225(b)(2) and is therefore not entitled to a bond hearing.

Accordingly,

IT IS HEREBY ORDERED that the PETITION FOR WRIT OF HABEAS CORPUS [Doc. 1] is DENIED and DISMISSED.

---

[7] For this Court to conclude that an alien who has unlawfully entered the United States and managed to remain in the country for a sufficient period of time is entitled to a bond hearing, while those who seek lawful entry and submit themselves for inspection are not, not only conflicts with the unambiguous language of the governing statutes, but would also seemingly undermine the intent of Congress in enacting the IIRIRA. This Court thus "refuse[s] to interpret the INA in a way that would in effect repeal [Congress's] statutory fix." *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024).

THUS, DONE AND SIGNED in Chambers on this 31st day of October 2025.

                                                  DAVID C. JOSEPH
                                                  UNITED STATES DISTRICT JUDGE